**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**

MELVIN GULOTTA,
               Appellant,

        v.

DEPARTMENT OF THE NAVY,
               Agency.

DOCKET NUMBER
DC-0752-17-0483-I-1

DATE: March 22, 2024

# THIS FINAL ORDER IS NONPRECEDENTIAL[1]

<u>Melvin Gulotta</u>, King George, Virginia, pro se.

<u>Meghan Stoltzfus</u> and <u>Matthew B. Hawkins</u>, Dahlgren, Virginia, for the agency.

**BEFORE**

Cathy A. Harris, Chairman
Raymond A. Limon, Vice Chairman

**FINAL ORDER**

The appellant has filed a petition for review of the initial decision, which sustained his removal. Generally, we grant petitions such as this one only in the following circumstances: the initial decision contains erroneous findings of material fact; the initial decision is based on an erroneous interpretation of statute or regulation or the erroneous application of the law to the facts of the case; the administrative judge's rulings during either the course of the appeal or the initial

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case; or new and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed. Title 5 of the Code of Federal Regulations, section 1201.115 (5 C.F.R. § 1201.115). After fully considering the filings in this appeal, we conclude that the petitioner has not established any basis under section 1201.115 for granting the petition for review. Therefore, we DENY the petition for review and AFFIRM the initial decision as MODIFIED by this Final Order to supplement the initial decision's analysis of the appellant's affirmative defense. The initial decision is now the Board's final decision. 5 C.F.R. § 1201.113(b).

## BACKGROUND

The appellant was employed as an Information Technology Specialist for the agency's Naval Systems Engineering Research Center (NSERC). Initial Appeal File (IAF), Tab 10 at 83. He served as the NSERC Infrastructure Team Lead and was responsible for overseeing hardware and software supported by his team, which was comprised of contract employees and frequently interacted with the "Tools Team." IAF, Tab 8 at 5-6; Tab 41 at 60, 71-72.

In November 2016, the appellant reportedly made disparaging remarks to Program Manager A, saying that he did not know anything and that "everything [he] touched has been an epic failure."[2] IAF, Tab 10 at 58. During the altercation, Program Manager B attempted to break up the dispute because he feared that the appellant would get physical. *Id*. In a subsequent verbal altercation between the appellant and a Tools Team contractor employee on January 24, 2017, the appellant reportedly entered the contractor employee's workspace, standing very closely over him and speaking in an argumentative and heated tone. IAF, Tab 8 at 19. Shortly thereafter, the NSERC Configuration

---

[2] Because we discuss two individuals with the title Program Manager, we have referred to them as Program Manager A and Program Manager B.

Manager emailed some of the appellant's colleagues regarding the appellant's hostility in the workplace and unprofessional conduct. IAF, Tab 10 at 77. A day later, the Tools Team contractor employee emailed Program Manager A stating that the appellant is constantly belligerent, mentally unstable, and is a legitimate threat of mass violence. *Id*. at 82. That same day, the Tools Team Lead emailed the Group Lead describing the appellant as constantly yelling and cursing at employees, slamming doors, and throwing objects. *Id*. at 79-80. She also stated that the appellant removed permissions from Tools Team members so that they could not install or configure applications as part of their jobs. *Id*. at 80.

Following complaints regarding the appellant's behavior, the agency initiated an investigation. IAF, Tab 41 at 51. During the investigation, several of the appellant's coworkers stated that the appellant exhibited verbally abuse behavior towards them, IAF, Tab 8 at 4-26, Tab 10 at 56-66, and that he would go into "outrages" that included cursing and kicking and hitting things, IAF, Tab 10 at 22. The Infrastructure Contractor Lead also told investigators that the appellant expressed that he wanted to run over certain colleagues with his car, punch them in the face or throat, kick a coworker down the stairs, and kill the Tools Team if he could get away with it.[3] *Id*. at 23, 27-29. The Contractor Lead's statement also alleged that the appellant deleted and purposely impeded some of the Tools Team members from performing their work. *Id*. at 24-26.

Based on this alleged conduct, the agency proposed the appellant's removal on the following charges: behavior that caused anxiety in the workplace, inappropriate behavior, and behavior that caused disruption in the workplace. IAF, Tab 9 at 105-13. The appellant responded orally and in writing, IAF, Tab 8 at 43-45, 51-53, 68-140, and the deciding official imposed the removal, *id*. at 31-37.[4]

---

[3] The Infrastructure Contractor Lead worked for a Government contractor and was the appellant's counterpart. IAF, Tab 10 at 21.

[4] The deciding official did not sustain specification h. of the first charge and d. of the second charge, in which the agency alleged that the appellant reached out to the

The appellant filed the instant Board appeal challenging his removal but did not request a hearing.  IAF, Tab 1.  On the basis of the written record, the administrative judge issued an initial decision sustaining the removal.  IAF, Tab 42, Initial Decision (ID).  She found that the agency proved all charges and specifications except for one of the three specifications underlying the charge of causing disruption in the workplace.  ID at 11-15; IAF, Tab 9 at 105-06.

The administrative judge further found that the appellant failed to prove his affirmative defense of reprisal for his disclosures wherein he alleged that the agency was engaging in software piracy and other violations of agency information technology security policies and procedures.  ID at 15-18.  Specifically, the administrative judge found that the agency proved by clear and convincing evidence that it would have removed the appellant in the absence of his disclosures.  ID at 17-18.  Lastly, she concluded that the agency demonstrated nexus and that the penalty was within the bounds of reasonableness.[5]  ID at 18-20.

The appellant has filed a petition for review, and the agency has responded.  Petition for Review (PFR) File, Tabs 1, 3.  The appellant has filed a reply to the agency's response.  PFR File, Tab 4.

## DISCUSSION OF ARGUMENTS ON REVIEW

<u>The administrative judge properly denied the appellant's whistleblower retaliation affirmative defense.</u>

*The appellant proved that he made a protected disclosure that was a contributing factor to his removal.*

In a removal appeal, an appellant's claim of whistleblowing reprisal is treated as an affirmative defense.  *Ayers v. Department of the Army*, 123 M.S.P.R. 11, ¶ 12 (2015).  In such an appeal, once the agency proves its initial case by

---

contractor's program to report and request the termination of contractor employees. IAF, Tab 8 at 31-32, Tab 9 at 105-06.

[5] The appellant has not challenged the administrative judge's finding regarding nexus, and we find no reason to disturb this finding on review.  PFR File, Tab 1; ID at 18-19.

preponderant evidence, the appellant must show by preponderant evidence that he made a protected disclosure under 5 U.S.C. § 2302(b)(8) or engaged in protected activity under 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D), and that the disclosure or activity was a contributing factor in the agency's action. *Ayers*, 123 M.S.P.R. 11, ¶ 12 & n.1.

The administrative judge found that the appellant made protected disclosures that the agency was engaging in software piracy and other violations of agency information technology security policies and procedures. ID at 16-17; *see Scoggins v. Department of the Army*, 123 M.S.P.R. 592, ¶¶ 3, 12-13 (2016) (affirming the administrative judge's finding that the appellant's disclosures, including, among others, that classified information and equipment had been located in an unauthorized area, were protected because he reasonably believed that they evidenced a violation of Army regulations). She found that he made these disclosures to his first-line supervisor in September and November 2016. ID at 16; IAF, Tab 41 at 46-50, 53-55, 57. She also determined that he repeated his concerns to the deciding official in May 2017. ID at 16-17; *e.g.*, IAF, Tab 8 at 72-74, 78, 80-81, 127-29. The administrative judge also found that the appellant proved that his disclosures were a contributing factor in the agency's removal based on the knowledge/timing test. ID at 16-17.

> *The agency proved by clear and convincing evidence that it would have removed the appellant even in the absence of his protected disclosures.*

When the appellant has established a prima facie case of whistleblowing reprisal, the burden of persuasion shifts to the agency to show by clear and convincing evidence that it would have taken the same personnel action absent the protected disclosure or activity. *Elder v. Department of the Air Force*, 124 M.S.P.R. 12, ¶ 39 (2016). In determining whether an agency has met this burden, the Board will consider the following factors: the strength of the agency's evidence in support of its action; the existence and strength of any

motive to retaliate on the part of the agency officials who were involved in the decision; and any evidence that the agency takes similar actions against employees who are not whistleblowers but who are otherwise similarly situated. *Carr v. Social Security Administration*, 185 F.3d 1318, 1323 (Fed. Cir. 1999). The Board does not view these factors as discrete elements, each of which the agency must prove by clear and convincing evidence, but rather weighs these factors together to determine whether the evidence is clear and convincing as a whole. *Lu v. Department of Homeland Security*, 122 M.S.P.R. 335, ¶ 7 (2015).

The administrative judge found that the first *Carr* factor weighed in favor of the agency because its removal action was well-supported by the record. ID at 17. We agree. An agency's proof of its charges is a factor weighing in its favor. *Shibuya v. Department of Agriculture*, 119 M.S.P.R. 537, ¶ 36 (2013). We note that the deciding official and administrative judge did not sustain all of the specifications underlying the three charges, thus detracting slightly from the strength of the agency's evidence. *See Aquino v. Department of Homeland Security*, 121 M.S.P.R. 35, ¶ 28 (2014) (finding that the agency's internal review board's decision not to sustain one of the two charges cited by the deciding official detracted from the overall strength of the agency's evidence). Nevertheless, strong evidence in the record supports finding that the appellant engaged in serious misconduct. This misconduct included showing colleagues a knife he kept on agency property, physically threatening colleagues, using inappropriate and insulting language in referring to coworkers, and delaying their work.

The appellant argues on review that his January 2017 performance evaluation did not mention any behavioral issues, thereby demonstrating that he was not a problematic employee and bolstering his whistleblower retaliation claim. PFR File, Tab 1 at 24. This evaluation was completed by the appellant's first-line supervisor after the appellant made his protected disclosures. IAF, Tab 40 at 255. Thus, the fact that the first-line supervisor did not mention the

appellant's behavioral issues appears to weigh in the agency's favor by suggesting that the supervisor did not take the appellant's disclosures into account when taking subsequent actions. Further, the appellant's supervisor had the choice of only two ratings, making his choice to rate the appellant as "acceptable" versus "unacceptable" less significant. *Id.* at 255. Finally, the appellant's first-line supervisor did not mention the appellant's behavior— positive or otherwise—in his January 2017 review. *Id.* at 260. Accordingly, we do not find that the evaluation undermines the strength of the agency's evidence.

The administrative judge also found that the second *Carr* factor, concerning the existence and strength of any motive to retaliate, weighed in favor of the agency. ID at 17-18. To the extent that the administrative judge found no evidence of retaliatory motive by the proposing and deciding officials, we modify that finding. *Id.* Those responsible for the agency's overall performance may be motivated to retaliate even if they are not directly implicated in the disclosures, as the criticism reflects on them in their capacity as managers and employees. *Whitmore v. Department of Labor*, 680 F.3d 1353, 1370 (Fed. Cir. 2012). Such criticism is sufficient to establish substantial retaliatory motive. *Chambers v. Department of Veterans Affairs*, 120 M.S.P.R. 285, ¶ 33 (2013). In this case, both of the proposing and deciding officials were within the appellant's chain of command and his disclosures concerned functions over which they had control. Thus, we find that they had some retaliatory motive. Nonetheless, we agree with the administrative judge that their credible denial of retaliatory motive and their swift action to investigate the appellant's pirating disclosures evidence that the motive was not strong. *See Runstrom v. Department of Veterans Affairs*, 123 M.S.P.R. 169, ¶ 17 (2016) (finding that the fact that an employee was accused of wrongdoing did not reflect negatively on his supervisor when agency officials looked into the appellant's allegations and, within a few days of the appellant's disclosure, found no wrongdoing).

On review, the appellant disagrees with the administrative judge's finding that his first-line supervisor investigated his concerns regarding the alleged software piracy and believed that they were resolved, and he argues that these findings create a false narrative that his first-line supervisor took appropriate action to rectify the situation. PFR File, Tab 1 at 5; ID at 17. Further, he states that the administrative judge incorrectly determined that the reported concerns regarding violations of agency information technology security policies and procedures and the software piracy disclosure did not result in negative consequences for his first-line supervisor. PFR File, Tab 1 at 5-8. He asserts that noncompliance with security protocols could have resulted in a loss of customers and a potential loss of accreditation of the agency's systems. *Id.* at 7-8. However, he does not point to any specific evidence in the record that supports his conclusions. *Id.* at 5-8. Instead, he appears to reference his arguments below. *Id.* As such, his petition does not meet the criteria for granting review.[6] *See*

---

[6] After the record closed on review, the appellant filed a motion for leave to file an additional pleading. PFR File, Tab 8. In his motion, he asserts that on May 6, 2019, the U.S. Court of Appeals for the Federal Circuit issued a precedential decision in *Robinson v. Department of Veterans Affairs*, 923 F.3d 1004 (Fed. Cir. 2019), directly affecting his appeal and that, because it was issued after the initial decision below, he wishes to file a pleading with the Board to ensure that "the rule of law be applied evenly." PFR File, Tab 8 at 3. He claims that *Robinson* provides that supervisors who do not take action to investigate reported wrongdoing by their subordinates face consequences for their inactions and that such consequences create a motive to retaliate. *Id.* We have reviewed the decision in *Robinson*, and it does not concern whether adverse consequences against a supervisor for failure to investigate reported wrongdoing create a motive to retaliate; it concerns only the scope of a supervisor's duties within the context of a negligent performance of duties charge. *Robinson*, 923 F.3d at 1009-13. Further, it is axiomatic that a supervisor can face a performance-based action or an adverse action for negligent performance of duties, *see, e.g., Velez v. Department of Homeland Security*, 101 M.S.P.R. 650, ¶ 11 (2006) (considering a charge of negligent performance of duties), *aff'd*, 219 F. App'x 990 (Fed. Cir. 2007), and *Robinson* does not add to that axiom. Moreover, here, the administrative judge concluded that there was no evidence that the supervisor faced any negative consequences for his actions. ID at 17. As such, a case providing for negative consequences against a supervisor for negligent performance of duties is of no import. Thus, although the decision in *Robinson* is new, it is not material to the instant appeal. Therefore, we deny the appellant's motion for leave to file an additional pleading. *See* 5 C.F.R. § 1201.115(d).

*Jackson v. Department of the Army*, 99 M.S.P.R. 604, ¶ 9 (2005) (finding that the standard for granting review was not met when the appellants disputed the administrative judge's factual findings by referencing their closing argument submitted below).

The appellant also argues that the administrative judge failed to discuss the "overwhelming number of violation[s] of law and policy that were occurring." PFR File, Tab 1 at 28. He argues that, by identifying and including the alleged violations in the initial decision, his whistleblower claim would have been more credible. *Id*. at 29. However, the appellant does not specify in his petition for review what the particular violations were and, more importantly, to whom he disclosed them.

The appellant also argues that the administrative judge incorrectly found that coworkers were instructed to work around him because of his alleged behavior, and that instead they were instructed to do so to hide other violations from him. *Id*. at 23, 27; ID at 8. He states that the directive to work around him serves as further proof that his first-line supervisor was aware of the negative consequences of allowing him to gain knowledge of violations. PFR File, Tab 1 at 7. Finally, the appellant argues that the timeline of events supports a finding that agency officials had a motive to retaliate. *Id*. at 27-28. For instance, he argues that Program Manager A spoke to him aggressively in his office less than 24 hours after the appellant met with his first-line supervisor to disclose the software piracy allegations and other concerns about Program Manager A. *Id*. He also states that, after disclosing this information to his first-line supervisor, he was no longer made aware of tasking. *Id*.

The retaliatory motive of the Program Manager A is relevant to the extent that he influenced the agency's decision to remove the appellant. *See Whitmore*, 680 F.3d at 1371 (explaining that the retaliatory motive of an individual outside an employee's chain of command may be imputed to the agency if he influenced the agency's decision). However, there is nothing to suggest such influence here.

Therefore, we decline to impute any retaliatory motive by Program Manager A to the individuals deciding the appellant's removal.

Next, we turn to the appellant's suggestion that the agency deliberately stopped tasking the appellant and instructed coworkers to work around him because of his disclosures. PFR File, Tab 1 at 23, 27. We decline to infer that, if true, this action reflects retaliatory motive. As the appellant himself describes it, the tasking stopped around January 29, 2017. PFR File, Tab 1 at 27. This coincides with the decision by the appellant's first-line supervisor to begin investigating the appellant's behavior on January 27, 2017. IAF, Tab 10 at 77-79, Tab 41 at 90. It is also consistent with the appellant's first-line supervisor observing in the proposed removal that "[c]oworkers are so uncomfortable around [the appellant] that program leaders have actually directed those individuals to go to [the appellant's] contractor counterpart" instead of the appellant. IAF, Tab 9 at 108. The record contains a sworn statement from the Tools Team Lead claiming that she instructed her team to avoid the appellant due to his behavior.[7] IAF, Tab 8 at 27, Tab 9 at 88-89, 94.

Lastly, the administrative judge found that the third *Carr* factor, concerning whether the agency takes similar actions against employees who are not whistleblowers but who are otherwise similarly situated, also weighed in favor of the agency. ID at 18; IAF, Tab 41 at 95-119. In particular, she found that the agency removed two employees who were not whistleblowers but who

---

[7] The appellant may be raising this argument in order to dispute the proposing official's determination that the appellant's coworkers were being instructed to avoid working with him to due to his behavior. IAF, Tab 9 at 108-09. The proposing official considered this factor in addressing the appropriateness of the penalty of removal. *Douglas v. Veterans Administration*, 5 M.S.P.R. 280, 305-06 (1981) (providing a nonexhaustive list of factors relevant to penalty determinations, and observing that the Board's review of an agency-imposed penalty is essentially to assure that the agency conscientiously considered the relevant factors and struck a responsible balance within tolerable limits of reasonableness). For the same reasons as discussed here, we are unpersuaded. The appellant does not otherwise challenge the penalty of removal and we decline to disturb the administrative judge's finding that it was appropriate. ID at 19-20.

engaged in similar misconduct. ID at 18. The appellant does not challenge this finding and we see no reason to disturb it. Weighing the *Carr* factors against one another and as a whole, we agree with the administrative judge that the agency has proven by clear and convincing evidence that it would have removed the appellant absent his disclosures.

We have considered the appellant's arguments on review but have concluded that a different outcome is not warranted. Accordingly, we affirm the initial decision as modified herein.

## NOTICE OF APPEAL RIGHTS[8]

The initial decision, as supplemented by this Final Order, constitutes the Board's final decision in this matter. 5 C.F.R. § 1201.113. You may obtain review of this final decision. 5 U.S.C. § 7703(a)(1). By statute, the nature of your claims determines the time limit for seeking such review and the appropriate forum with which to file. 5 U.S.C. § 7703(b). Although we offer the following summary of available appeal rights, the Merit Systems Protection Board does not provide legal advice on which option is most appropriate for your situation and the rights described below do not represent a statement of how courts will rule regarding which cases fall within their jurisdiction. If you wish to seek review of this final decision, you should immediately review the law applicable to your claims and carefully follow all filing time limits and requirements. Failure to file within the applicable time limit may result in the dismissal of your case by your chosen forum.

Please read carefully each of the three main possible choices of review below to decide which one applies to your particular case. If you have questions about whether a particular forum is the appropriate one to review your case, you should contact that forum for more information.

---

[8] Since the issuance of the initial decision in this matter, the Board may have updated the notice of review rights included in final decisions. As indicated in the notice, the Board cannot advise which option is most appropriate in any matter.

**(1) Judicial review in general**.  As a general rule, an appellant seeking judicial review of a final Board order must file a petition for review with the U.S. Court of Appeals for the Federal Circuit, which must be received by the court within **60 calendar days** of the date of issuance of this decision.  5 U.S.C. § 7703(b)(1)(A).

If you submit a petition for review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit.  The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

**(2) Judicial or EEOC review of cases involving a claim of discrimination**.  This option applies to you only if you have claimed that you were affected by an action that is appealable to the Board and that such action was based, in whole or in part, on unlawful discrimination.  If so, you may obtain judicial review of this decision—including a disposition of your discrimination claims—by filing a civil action with an appropriate U.S. district court (*not* the U.S. Court of Appeals for the Federal Circuit), within **30 calendar days** after you

receive this decision. 5 U.S.C. § 7703(b)(2); *see Perry v. Merit Systems Protection Board*, 582 U.S. 420 (2017). If you have a representative in this case, and your representative receives this decision before you do, then you must file with the district court no later than **30 calendar days** after your representative receives this decision. If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security. *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

Contact information for U.S. district courts can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

Alternatively, you may request review by the Equal Employment Opportunity Commission (EEOC) of your discrimination claims only, excluding all other issues. 5 U.S.C. § 7702(b)(1). You must file any such request with the EEOC's Office of Federal Operations within **30 calendar days** after you receive this decision. 5 U.S.C. § 7702(b)(1). If you have a representative in this case, and your representative receives this decision before you do, then you must file with the EEOC no later than **30 calendar days** after your representative receives this decision.

If you submit a request for review to the EEOC by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C. 20013

If you submit a request for review to the EEOC via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, N.E.
Suite 5SW12G
Washington, D.C.  20507

**(3) Judicial review pursuant to the Whistleblower Protection Enhancement Act of 2012**.  This option applies to you <u>only</u> if you have raised claims of reprisal for whistleblowing disclosures under 5 U.S.C. § 2302(b)(8) or other protected activities listed in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D).  If so, and your judicial petition for review "raises no challenge to the Board's disposition of allegations of a prohibited personnel practice described in section 2302(b) other than practices described in section 2302(b)(8), or 2302(b)(9)(A)(i), (B), (C), or (D)," then you may file a petition for judicial review either with the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction.[9]  The court of appeals must <u>receive</u> your petition for review within **60 days** of <u>the date of issuance</u> of this decision.  5 U.S.C. § 7703(b)(1)(B).

If you submit a petition for judicial review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C.  20439

---

[9] The original statutory provision that provided for judicial review of certain whistleblower claims by any court of appeals of competent jurisdiction expired on December 27, 2017.  The All Circuit Review Act, signed into law by the President on July 7, 2018, permanently allows appellants to file petitions for judicial review of MSPB decisions in certain whistleblower reprisal cases with the U.S. Court of Appeals for the Federal Circuit or any other circuit court of appeals of competent jurisdiction.  The All Circuit Review Act is retroactive to November 26, 2017.  Pub. L. No. 115-195, 132 Stat. 1510.

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

Contact information for the courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.


FOR THE BOARD:                    _____

                                  Gina K. Grippando
                                  Clerk of the Board

Washington, D.C.